UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

ROZELLE, JR. ET AL.,

    Appellants,

v.

BRANSCOMB, P.C., ET AL.,

    Appellees.

Civil Case No. 5:16-cv-01024 (RCL)

## MEMORANDUM OPINION

### I. INTRODUCTION

This case comes before the Court on appeal from five separate orders of the Bankruptcy Court regarding the jointly administered bankruptcy cases of Francis McQueen Rozelle, Jr. (appellant/debtor) and Clarita Sommers Johnson (appellant/debtor). The debtors, Francis McQueen Rozelle, Jr. and Clarita Sommers, appeal the following Orders of the Bankruptcy Court: (1) Order Allowing First Interim Application of Branscomb PC (appellee/Branscomb), for Professional Fees and Expenses for Patrick Autry during the Period September 1, 2014 through October 31, 2015 (ECF No. 593); (2) Order Granting Amended Application to Employ Plunkett & Griesenbeck, Inc., as litigation Counsel for the Estate (ECF No. 595); (3) Order Granting Central Texas Realty & Development, L.L.C.'s (appellee/broker) Application for Compensation and Reimbursement of Expenses (ECF No. 597); (4) Order Granting Motion For Sanctions for Debtor's Attorney Misconduct under Rule 9011 (ECF No. 600); and (5) Order Granting Motion For Sanctions for Debtor's Attorney Misconduct under Rule 9011 filed by Patrick H. Autry for Trustee John Patrick Lowe (ECF No. 601). This Court finds that the Bankruptcy Court did not err

in granting any of these five orders. Accordingly, this Court will affirm all five of the Bankruptcy Court's orders on appeal.

## II. BACKGROUND

On or about June 22, 2005, debtors inherited approximately 114 acres of land in San Antonio, Texas (real property). On June 2, 2006, the debtors borrowed $8.225 million from Broadway Bank to buy out Mr. Rozelle's sister, a third heir to the real property, and to pay property taxes. Debtors extended the loan on three occasions, making the date of maturity August 1, 2011. However, the loan was not repaid by the date of maturity and Broadway Bank posted the property for a non-judicial foreclosure sale on September 6, 2011. Because of the posting of the foreclosure sale, debtors filed for Chapter 11 bankruptcy in August 2011. In this initial Chapter 11 case, the debtors confirmed a plan of reorganization that afforded them 18 months to satisfy the debt before Broadway Bank could foreclose on the real property. After the reorganization plan was confirmed, SLF Noteholder acquired the debt from Broadway Bank. Appellants failed to sell the Real Property or pay the debt and SLF Noteholder scheduled a foreclosure sale for June 3, 2014.

On June 2, 2014, Debtors filed voluntary Chapter 11 bankruptcy petitions for a second time and avoided foreclosure. The cases were jointly administered at Case No. 14-51480-RBK. On August 28, 2014, the Bankruptcy Court ordered the appointment of a Trustee in the jointly administered Chapter 11 cases. John Patrick Lowe (appellee/trustee) was appointed as Trustee by the United States Trustee and the Bankruptcy Court approved the appointment on September 9, 2014. The trustee subsequently filed an Application to Engage Central Texas Realty & Development LLC (appellee/broker) as the real estate broker to assist in the sale of the real property. The Bankruptcy Court granted the application on October 30, 2014. Walter G. Busby (appellee) was designated as the principal of Central Texas Realty & Development. The debtors

appealed the order appointing Central Texas Realty but the District Court affirmed the Bankruptcy Judge's decision. Broker was then retained by the trustee to market and sell the 114 acres pursuant to an Exclusive Listing Agreement, which stipulated that broker would receive a commission equal to four percent (4%) of the gross purchase price of the real property and would be reimbursed for out of pocket marketing costs up to the amount of $10,000.00. With the approval of the Bankruptcy Court, trustee also retained Patrick Autry and his law firm—Branscomb PC—to act as his counsel in the administration of the bankruptcy cases.

On March 27, 2015, the Bankruptcy Court entered an order Authorizing and Approving the Sale of Real Property Free and Clear of all Interests Pursuant to 11 U.S.C. § 363(b) and (f). Appellants filed a Motion to Set Aside the Sale Order on March 24, 2016, which was amended four days later. The Bankruptcy Court denied Appellants' motion but it prohibited the buyer from obtaining title insurance, effectively stopping the closure of the sale. Consequently, the principal secured creditor, SLF IV-UTSA Blvd. Noteholder, LP (SLF Noteholder) renewed its previous request to modify the automatic stay to allow it to foreclose on the property. The Bankruptcy Court granted SLF Noteholder's request. To avoid foreclosure, debtors dismissed their appeal of the Sale Order and the sale of the real property went through. In March 2016, after the sale was completed, debtors alleged that the sale was procured through fraud and should be set aside pursuant to Federal Rule of Civil Procedure 60. The Bankruptcy Court dismissed the Rule 60 motion with prejudice. On December 14, 2015 the debtors' cases were converted to Chapter 7 proceedings, and appellee John Patrick Lowe was again appointed as the Trustee in the converted cases. [1]

---

[1] Chapter 11 Bankruptcy allows a debtor to retain their assets while they attempt to reorganize their debts and repay creditors, whereas under Chapter 7 Bankruptcy a debtors assets are immediately liquidated and creditors are paid from the proceeds. Conversion occurred in this case to liquidate the assets of the bankruptcy estate and pay creditors after the sale of the land.

## III. JURISDICTION AND STANDARD OF REVIEW

### A. Jurisdiction

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a) which provides district court's with the authority to hear appeals from final judgments and orders of bankruptcy judges. When a district court reviews the decision of a bankruptcy court it "functions as an appellate court, applying the standards of review generally applied in federal appeals courts." *Harvey Gulf Int'l Marine, Inc. v. Bennu Oil & Gas, LLC*, 559 B.R. 152, 154 (S.D. Tex. 2016).

### B. Standard of Review

On appeal, a district court "reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law *de novo*." *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009). Mixed questions of law and fact are reviewed *de novo*. *See In re Positive Health Mgmt.*, 769 F.3d 899, 903 (5th Cir. 2014). "Matters within a bankruptcy judge's discretion are reviewed for an abuse of discretion." *Mud King Prods., Inc. v. Nat'l Oilwell Varco, L.P.*, 2015 WL 862319 (S.D. Tex. 2015). The standard of review appropriate for each issue raised on appeal—fee and compensation awards, granting employment of litigation counsel, and imposing sanctions—is abuse of discretion. "[D]eference . . . is the hallmark of abuse-of-discretion review." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997). A Bankruptcy Court abuses its discretion if "its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (citations omitted).

## IV. ANALYSIS OF DEBTORS' CENTRAL ARGUMENTS ON APPEAL

The debtors—appellants here—argue that the Bankruptcy Court erred in granting all five of appellees' motions on the grounds that "the fees were procured by fraud, and the sanctions were nothing more than efforts to cover up the fraud and punish the debtors for upholding their duty to

4

report fraud to the proper authorities." Appellants Mot. to Amend Appellants Br. to Bankr. Orders. 29, ECF No. 17.

Fraud upon the court "requires a showing of an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 868, 872 (5th Cir. 1982). Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In order to prove fraud, appellants' bear the burden of establishing that: (1) appellee made a material representation that was false; (2) the appellee knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the appellee intended to induce the appellant to act upon the representation, and (4) the appellant actually and justifiably relied on the appellee's representation, (5) which caused the appellant's injury. *See Ernst & Young, L.L.P. v. Pacific Mutual Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

Here, debtors' brief is composed of numerous conclusory and unsupported allegations that detail how appellees schemed to sell the real property for millions less than its actual worth and subsequently committed fraud upon the court by providing "their own perjured testimony." Appellants Mot. to Amend Appellants Br. to Bankr. Orders. 12. More specifically, debtors allege that "[buyers] attained the property appraised at $50 million for some $30 million below fair market value due to the perjured testimony of Walt Busby, trustee John Patrick Lowe and his counsel Patrick Autry regarding entitlements and value." *Id.* at 16. Judge King found that the sale price was adequate given that the valuations debtors provided were for the real property "as developed" rather than "as is." However, debtors also assert that "the impartial function of the court was directly corrupted by an officer or officers of the court, and Judge King, did not perform his judicial function, when he twice approved the sale of the debtors property based on the now

5

public false and perjured testimony proffered by Sanders, Schumacher and those who aid, abet and ignore." Appellants Mot. to Amend Appellants Br. to Bankr. Orders. 21. While debtors brief contains an explanation of how the alleged scheme was carried out, this Court finds that they fail to provide sufficient evidence—if any—to support their allegations of fraud. Consequently, debtors' subsequent argument that the sanctions were granted in an effort to cover up the alleged fraud also fails.

## V. THE BANKRUPTCY COURT DID NOT ERR IN GRANTING THE FIRST INTERIM APPLICATION OF BRANSCOMB'S APPROVAL OF ATTORNEY'S FEES AND EXPENSES AS COUNSEL TO TRUSTEE

### A. Bankruptcy Court's Decision

The Bankruptcy Court granted the First Interim Application of Branscomb PC for Approval of Attorneys' Fees and Expenses as Counsel to Trustee for the period beginning September 1, 2014 through October 31, 2015 in the amount of $203,659.00 for fees and $1,718.62 for expenses. The Bankruptcy Court found the fees and expenses to be reasonable and necessary given that appellee Branscomb and their attorney—Patrick Autry—acted as "shrewd businessmen" throughout the sale of the Real Property. Trans. of Aug. 1, 2016, ¶ 11. ECF No. 11-2.

### B. Legal Standards

#### 1. *Compensation of Officers*

Under Section 330 of the Bankruptcy Code, Bankruptcy Courts have the discretion to award reasonable compensation "for actual, necessary services rendered" to debtors' trustee, attorney, or other paraprofessionals employed by any such person in bankruptcy cases. 11 U.S.C. § 330(a)(1)(A). The Bankruptcy Court also has the discretion to reimburse these parties for "actual necessary expenses." *Id.* § 330(a)(1)(A). Section 330(a)(3) further asserts that "[i]n determining

the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11 [], or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including-- (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title []; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title []." *Id.* § 330(a)(3).

### 2. *Lodestar Method*

The Fifth Circuit recognizes the lodestar method as a proper tool to calculate "reasonable" attorneys' fees under § 330. *See Cahill v. Walker & Patterson, P.C.*, 428 F.3d 536, 539, (5th Cir. 2005). "A court computes the lodestar by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community. A court then may adjust the lodestar up or down based on the factors contained in § 330 and its consideration of the twelve factors listed in *Johnson*, 488 F.2d at 717-19.[2] While the bankruptcy

---

[2] Under *Johnson*, court's should consider the following when calculating reasonable attorneys' fees: "the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. Failure to consider these factors and to reflect such consideration in the record constitutes an abuse of discretion." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 715, (5th Cir. 1974).

7

court has considerable discretion in applying these factors, it must explain the weight given to each factor that it considers and how each factor affects its award." *Id.* at 540 (citations omitted).

### C. Analysis

On appeal, this Court reviews the Bankruptcy Court's award of fees for abuse of discretion. *See Matter of Woerner*, 783 F.3d 266, 270-71 (5th Cir. 2015). Here, appellees' First Interim Fee Application presented the requisite lodestar and *Johnson* factor analyses to support their fee determinations and the Bankruptcy Court concluded that they were reasonable and necessary based upon an hourly rate multiplied by the time expended. While debtors allege that appellee Branscomb should not have received any fee award given that the sale of the real property was procured by fraud, this Court finds no evidence of this alleged fraud. Additionally, appellants fail to provide the Court with any non-conclusory evidence that the Bankruptcy Court relied on erroneous findings of fact or law in awarding attorneys' fees and expenses to appellee Branscomb.

Because the Bankruptcy Court relied on the lodestar method to determine Branscomb's fee award and there is no evidence that it relied on erroneous findings of fact or law in reviewing this method, this Court finds that the Bankruptcy Court did not abuse its discretion in awarding attorneys' fees and expenses to appellee Branscomb.

## VI. THE BANKRUPTCY COURT DID NOT ERR IN AUTHORIZING CENTRAL TEXAS REALTY & DEVELOPMENT, L.L.C.'S APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

### A. Bankruptcy Court's Decision

The Bankruptcy Court held that the terms of the Exclusive Listing Agreement for the marketing and sale of the real property and the commission requested were reasonable and that, as a result, Central Texas Realty was entitled to receive a commission in the amount of $812,000.00 on the sale of the real property identified in the Application, and a further award of $8,569.90 for

reimbursement of expenses incurred in connection with the marketing and sales of the real property, for a total amount of $820,569.90. The Bankruptcy Court considered the Exclusive Listing Agreement to be reasonable given that Central Texas Realty secured a buyer for the Real Property that paid $20,300,000.00. This sale provided a majority of the funds available in debtors' bankruptcy estates for the distribution to creditors. Judge King stated "[i]t's just a four percent commission plus expenses, so, I mean, there's really no way to claim that it's unreasonable. He did the work, he did the job, he got the sale." Trans. of Aug. 1, 2016, ¶¶ 7-11.

### C.  Analysis

This Court reviews the Bankruptcy Court's award of fees for abuse of discretion. *See Matter of Woerner*, 783 F.3d 266, 270-71 (5th Cir. 2015). Section 330(a)(3) establishes that a court should determine "the nature, the extent, and the value of such services" when determining the proper fee award. Here, the Bankruptcy Court's decision to award compensation and expenses to Central Texas Realty & Development, LLC relied on the fact that it secured a buyer for the real property in the amount of $20,300,000.00. This Court finds that procuring a buyer for the real property is a relevant factor to consider under section 330(a)(3). Additionally, debtors fail to provide any evidence that the compensation and reimbursement of expenses to Central Texas Realty was based on an erroneous finding of fact or law. This Court finds that the Bankruptcy Court did not abuse its discretion in granting Central Texas Realty's application for compensation and reimbursement of expenses given that the Bankruptcy Court's decision relied on the consideration of relevant factors outlined in section 330(a)(3).

## VII. THE BANKRUPTCY COURT DID NOT ERR IN AUTHORIZING THE TRUSTEE'S EMPLOYMENT OF PLUNKETT & GRIESENBECK, INC. AS LITIGATION COUNSEL

### A. Bankruptcy Court's Decision

The Bankruptcy Court granted trustee's request to employ Ronald Hornberger of the law office of Plunkett & Grisenbeck, Inc. as litigation counsel for the estate given that trustee's application complied with the requirements of 11 U.S.C. §§ 327 and 794, Federal Rule of Bankruptcy Procedure 2014 and Local Rule 2014.

### B. Legal Standards

#### 1. *Standing to Appeal*

"Bankruptcy standing is narrower than standing under U.S. Const. art. III. Only a person aggrieved has standing to appeal an order of the bankruptcy court. Prerequisites for being a person aggrieved are attendance and objection at a bankruptcy court proceeding." *In re Camp Arrowhead, Ltd.*, 451 B.R. 678, 681 n.8 (Bankr. W.D. Tex. 2011).

#### 2. *Trustee's Appointment of Professionals*

"An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to §327, §1103, or §1114 of the Code shall be made only on application of the trustee or committee." F. R. BANKR. P. RULE 2014. Under Federal Rule of Bankruptcy Procedure 2014, (1) the application shall state the specific facts showing the necessity for the employment; (2) the name of the person to be employed; (3) the reasons for the selection; (4) the professional services to be rendered; (5) any proposed arrangement for compensation; and; (6) to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. *Id.* The application shall

be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. *Id.*

C. **Analysis**

This Court reviews the Bankruptcy Court's order granting appellee trustee's employment of Plunkett & Grisenbeck, Inc. as litigation counsel for the estate for abuse of discretion. First, appellees assert that the order authorizing the trustee's employment of Plunkett & Griesenbeck, Inc. should be affirmed because debtors lack standing to appeal. On July 8, 2016, the trustee filed his Amended Application to Employ Plunkett & Griesenbeck, Inc. as Litigation Counsel. Debtors did not object and the Bankruptcy Court granted the motion. Because debtors failed to object at the time the motion was granted, this Court finds that they lack standing to appeal.

However, even if debtors did not lack standing to appeal this Court finds that the Bankruptcy Court did not err in granting appellee trustee's employment of Plunkett & Griesenbeck, Inc. as litigation counsel. Here, the trustee (1) explained that Plunkett & Griesenbeck was being employed to defend him in a Civil Action filed by the debtors because Branscomb, litigation counsel for the estate generally, is also a defendant in the Civil Action; (2) named Ronald Hornberger as the person to be employed; (3) explained that he selected Mr. Hornberger because "he has years of experience in prosecuting and defending claims in both federal court and bankruptcy court;" (4) noted that Mr. Hornberger would be hired in his capacity as a lawyer; (5) stipulated that Mr. Hornberger would be compensated on an hourly basis at his current rate of $400.00 per hour, which was subject to change; and (6) stated he "believes that, with one exception, Mr. Hornberger has no connections with any party in interest in this case and that he is

disinterested." App. to Emp. Litig. Counsel, ¶¶ 1-6. The application was accompanied by an Affidavit from Mr. Hornberger, which disclosed that his partner, Ty Griesenbeck, would be defending the May 31, 2016 Civil Action on behalf of Patrick Autry and Branscomb PC. Again, appellant's sole argument that the Bankruptcy Court erred in granting this order centers around their conclusory and unsupported allegations that the sale of the real property was procured by fraud. Therefore, this Court finds that the Bankruptcy Court did not err in approving the employment of Plunkett & Griesenbeck, Inc. as litigation counsel for the estate given that there is no evidence that the Bankruptcy Court abused its discretion in approving trustee's application to employ litigation counsel.

## VII. THE BANKRUPTCY COURT DID NOT ERR WHEN IT APPROVED TRUSTEE'S AND BRANSCOMB'S SANCTIONS AGAINST THE APPELLANTS

### A. Bankruptcy Court's Decisions

The Bankruptcy Court granted Branscomb's Sanctions Motion pursuant to Federal Rule of Bankruptcy Procedure 9011, which permitted Branscomb to seek recovery of its fees and expenses in connection with its defenses of its First Interim Fee Application. The debtors objected to the First Interim Fee Application because they assert that Branscomb, litigation counsel to the estate, was not "disinterested" given that it also represented Valero Energy Corporation, another party who had previously tried to purchase the real property, as a client. Appellee Branscomb asserted that debtors' allegations were without merit given that Valero made no appearance in these cases. The Bankruptcy Court granted Branscomb's Sanctions Motion given that the debtors' allegations were conclusory and without merit, either in fact or law, even after debtors were given the opportunity to withdraw or correct the allegations.

Additionally, the Bankruptcy Court granted trustee's Motion for Sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 given that appellants continued to file frivolous

appeals and motions in an attempt to delay the sale of the real property. More specifically, the Bankruptcy Court approved sanctions in the form of a "gatekeeper" order which requires the debtors to submit all future pleadings challenging the Bankruptcy Court's prior orders of March 27, 2015 and April 22, 2015 concerning the sale of the debtors' interests in the real property, or challenging the sale of the real property itself prior to filing any such pleading with the Court. The Bankruptcy Court further ordered that it would review any such pleadings to determine "whether the debtors' have, with the specificity required, alleged non-frivolous grounds for the review of the Sale Orders or the sale which the Court has not previously addressed." Order Granting Mot. for Sanctions for Debtor's Att'y. 2. ECF. No. 601.

### B. Legal Standards

#### 1. *Federal Rule of Bankruptcy 9011*

Under Federal Rule of Bankruptcy 9011, counsel certifies that to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) the pleadings and allegations are not being presented for any improper purpose, (2) the claims, defenses, and other legal contentions are warranted by existing law, or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. FED. R. BANKR. P. 9011

#### 2. *Fee Defense Litigation Sanctions*

Traditionally, under the American rule, "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2160 (2015). However, the Supreme Court noted in *Asarco* that "[t]o the extent the

13

United States harbors any concern about the possibility of frivolous objections to fee applications, we note that 'Federal Rule of Bankruptcy Procedure 9011—bankruptcy's analogue to Civil Rule 11—authorizes the court to impose sanctions for bad-faith litigation conduct, which may include 'an order directing payment . . . of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.'" *Id.* at 2168 n.4.

### 3. *"Gatekeeper" Sanctions*

"Federal courts have the power to enjoin plaintiffs from future filings when those plaintiffs consistently abuse the court system and harass their opponents." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 183 (5th Cir. 2008) "In determining whether it should impose a pre-filing injunction or should modify an existing injunction to deter vexatious filings, a court must weigh all the relevant circumstances, including the following four factors: (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Id.* at 189.

### C. Analysis

"The bankruptcy court's decision to impose sanctions is discretionary, therefore we review the exercise of this power for abuse of discretion." *Placid Ref. Co. v. Terrebonne Fuel & Lube (In re Terrebonne Fuel & Lube)*, 108 F.3d 609, 613, (5th Cir. 1997) Here, the Bankruptcy Court awarded Branscomb's sanctions motion, which allowed Branscomb to seek recovery of its fees and expenses in connection with its defenses of its First Interim Fee Application. Additionally, the Bankruptcy Court granted trustee's motion for sanctions in the form of a "gatekeeper" order. Appellants argue that the "sanctions were nothing more than efforts to cover up the fraud and

punish the debtors for upholding their duty to report fraud to the proper authorities." Appellants Mot. to Amend Appellants Br. to Bankr. Orders. 29. Debtors do not provide evidence to support their allegations that the sanctions were made as an effort to cover up the fraud but rather insinuate that this is the only logical reason for sanctions to be requested and approved.

While sanctions against *pro se* plaintiffs are rare, *pro se* litigants can be sanctioned for frivolous pleadings. *See Coughlan v. Starkey*, 852 F.2d 806, 816 n.18 (5th Cir. 1988). Here, appellants have continued to file a number of meritless attacks against appellees. Judge King stated "it's my opinion that all of these appeals and motions for reconsideration, and Rule 60(b) motions, and new lawsuits in U.S. District Court, are just part of a delay process by Mr. Rozelle, primarily, and by Ms. Johnson, his mother, secondarily, just an attempt to try to prevent the sale from ever becoming effective — it has closed — but to prevent it from becoming effective and to somehow unravel the sale, and it's just not going to work." Trans. of Aug. 1, 2016 at 11-12. This Court finds that Judge King did not abuse his discretion in awarding sanctions to either Branscomb or trustee given that no evidence has been presented that suggests his analysis is based on an erroneous finding of fact or law.

## V. CONCLUSION

For the reasons stated above, this Court finds that the Bankruptcy Court did not err in granting the following orders: (1) Order Allowing First Interim Application of Branscomb PC, for Professional Fees and Expenses for Patrick Autry during the Period September 1, 2014 through October 31, 2015; (2) Order Granting Amended Application to Employ Plunkett & Griesenbeck, Inc., as litigation Counsel for the Estate; (3) Order Granting Central Texas Realty & Development, L.L.C.'s Application for Compensation and Reimbursement of Expenses; (4) Order Granting Motion For Sanctions for Debtor's Attorney Misconduct under Rule 9011; and; (5) Order Granting

Motion For Sanctions for Debtor's Attorney Misconduct under Rule 9011 filed by Patrick H. Autry for Trustee John Patrick Lowe. Therefore, this Court will affirm all five of the Bankruptcy Court's orders.

A separate order accompanies this memorandum opinion.

*Royce C. Lamberth*
Royce C. Lamberth
United States District Judge

DATE: July 31, 2017